Council, my name is Chuck Spivak, and I appear on behalf of the appellant Great American Alliance Insurance Company. Your Honors, for the Windermere Baptist Conference Center to qualify as an additional insured under the Great American Insurance Policy, issued to Student Life as an organization of Student Life leased or rented property, Windermere's liability must arise out of the ownership, maintenance, or use of that portion of the premises leased by Windermere to Student Life. Now the facts of this case are undisputed that Windermere's liability to the Richards did not arise out of its ownership, maintenance, or use of the lodging units where Carly Richards slept, of the classrooms where she received religious instruction, or of the chapel, restrooms, or cafeteria she shared with other campers. Nor is Windermere liable or does its liability arise from the fact it contracted with Student Life to host an event on its 300-acre campus. Windermere's liability arises here solely and exclusively because of its ownership, maintenance, and use of the EDGE Challenge course. And even applying the common man definition of lease championed by the trial court and by the appellees in this case, the EDGE was not leased by Windermere to Student Life. It was leased to the Searcy Baptist Congregation. The amended- Wait, wait, wait. The Searcy Baptist Congregation?  They paid for it? Well, wait, wait. The parents did. Parents did? Yeah. The congregation didn't do anything. It says the congregation even incorporated counsel. Most Baptist churches aren't. No, I agree, Your Honor. I use that phrase to talk about the parents as a group. So you say the parents did it directly with the EDGE? That's exactly right. The record on that is undisputed. The money did not funnel through Student Life. The paperwork did not funnel through Student Life. It was a direct arrangement. Your Honor, the amended conference contract between Student Life and Windermere and all of the collateral documents surrounding it, for that matter, only gave Student Life, for the benefit of its customers, exclusive use of some portions of Windermere's property and shared use of others. But it did not give Student Life the use of the EDGE. And by use here, we're not talking about exclusive use. We're talking about any use. The Appleese can talk all they want about the common man definition of a lease not requiring exclusive use, but they can't suggest there can be a lease of premises without any use. Well, suppose, I want to figure out the extent of your argument, dining hall. Suppose that somebody had slipped and fallen in the dining hall because somebody spilled their orange juice. Would that be covered under your view of the contract? Our argument would not, Your Honor, because it's very clear under Missouri law that a dining hall was not one of those premises to which the Sirius E. Baptist Convention of Tenancies would be exclusive. Well, counsel, your exclusive case is from a landlord-tenant case, right? Which would be the only source of authority, given we're talking about Well, there are lots of different kinds of leases, counsel, that aren't landlord-tenant. Do you believe that Missouri only recognized leases for landlord-tenant situations? Tell me if I'm wrong. No, I think they would, Your Honor. No, I've asked the question in too many different ways. Do you think Missouri says that leases can be around for something other than landlord-tenant? You can lease equipment. Sure, yeah. You can lease property. Yeah. But for the purposes of this case, and for the purposes of an insurance policy that talks about lease of premises, not contracting for an event, not a lease of equipment, not a lease of a zip line or the harnesses associated with it, but to talk about a lease of premises, the place to look for authority would be landlord-tenant. I think I stepped on Judge Straus' questions, by the way. He's a law professor. He's going to walk with you somewhere. Go ahead. Yeah, well, I was just, I was curious, you know, it's completely fine, but I was curious about the, your view of how far this goes, which is there are certain other things that are listed in the contract as well between Student Life and the Conference Center. In particular, the Wilderness Creek Auditorium and the Deer Ridge Conference Room were specifically listed during certain periods of time. Suppose that something happened in one of those places. Now, they don't have exclusive use throughout their time there, but it, you know, it does appear in the contract. Is that, would a slip and fall there be covered? During one of the specific things that they were granted exclusive use of for a specific period of time, yes. If that's the case we were talking about, we wouldn't be here. So it really comes down to what was in the contract or the agreement between the two parties. More than exclusive use. It's really what they contracted about. And beyond that, in this case, Your Honor, because I'm afraid that the trial judge in creating a remedy here and going through this whole analysis of patent and latent ambiguity really directed attention away from what the real issue here is. And that is, was the edge horse, that portion of the premises that was leased by Windermere to the named insured Student Life? And when we look at it that way, the answer is particularly easy. The only way that it becomes a little bit questionable is if we start talking about facts that this case isn't about. When we start talking about the chapel or when we start talking about the cafeteria, we start talking about the restrooms. But if we talk about what this case is about, and this is important, because while there's some talk in here that somehow the liability arises out of the whole idea that there was just some agreement for the hosting of a conference, you've got to go back to what the policy language says. And the policy language says that the coverage only applies to liability arising out of the ownership, maintenance, or use of that portion of the premises leased to you. So there's nothing in this language that can be interpreted as saying, well, but it also might apply to Windermere's liability arising out of the mere fact that it contracted with Student Life to host an event. And that's how they tried to change the argument, but that attempt to change the argument doesn't fit at all within the language of what the insurance contract says. Now, you'd concede, though, that if one organization had it, like the senior citizens all had it for one big deal, I'm not away from Student Life, I understand that, but the other end of the world, that would be a different case, right? Yeah. If one organization had leased the entire thing. Right. Which happens, counsel. Go ahead. Yeah. And everything was available to them, and that was part of the contract, and that was the organization that was the named insured under the policy. And that policy then said that if that named insured contracts with someone to enter into a lease, and that someone's liability arises out of that portion of the property that's leased to the named insured, then there would be coverage. But again, Your Honor, that's not what this case is. Well, what about the facts back response sheet? Is that a killer to you? Not at all, Your Honor, because the facts back response sheet doesn't change the fact that Student Life did not have use of, nor did it pay consideration for, two of the elements of a common law definition of lease at the trial court and the Apple Ease Challenge, the edge. Okay? So there's separate consideration to use the edge. And not paid by Student Life, paid by someone else. And a separate agreement entered into for the use of this. The specific release is the reservation form, entered into with Windermere by someone other than... Is the edge only available to people who are using other portions of the premises, or is it available to the public as well? It's only available by direct right arrangement with Windermere for the payment of the fee for the use of it and the execution of the documents condition preceding to the use of it. So your question is, could anyone off the street use it? The answer to that question is probably no. But I think that in itself is an irrelevant consideration for this reason. It's a long way from the nearest street, too, counsel. It's a long way from the street. Yeah, go ahead. Your Honor, the point here is, and this is the argument, Judge Smith, that I think you're trying to get to is, well, but they wouldn't have been able to use the edge had they not entered into some agreement to host an event with Windermere. Even if we concede that, here's the point. The contract at best gave the parents of the children from the Searcy Baptist Church the So the contract at issue here, the amended conference contract, at best was an agreement by which a third party was given an opportunity to enter into a lease. Now a lease is a lease. A lease isn't a contract to give a third party an opportunity to enter into a lease. And no common man would say that a contract that says, you know what, I'm going to give you a chance to negotiate a lease with someone else, that that contract is itself a lease. It's owned by Windermere, right? No doubt about it, Your Honor. Okay, proceed. No doubt about it. I want to be sure I was getting this right. Bringing it back to the policy language, bringing it back to the policy language, the only way that Windermere is an additional insured under this policy is if its liability arises out of the ownership, maintenance, or use of that portion of the premises it leased to Student Life. And it did not lease the edge to Student Life. It entered into an agreement with Student Life that granted to Student Life the opportunity to give to one of its customers an opportunity to enter into a lease. But that agreement itself, by no common means of the definition, can be considered a lease. The problem with the court's and the appellee's argument is that it forgets several important facts. The edge may have been part of Windermere's property, and Student Life may have contracted for an event to take place at Windermere's property, but no one gets to use that portion of Windermere's property that is the lease by contracting for an event to take place on Windermere's property. You have to execute a separate lease and make a separate payment to use that portion of Windermere's property that is the edge, and it is that portion of Windermere's property out of which Windermere's liability potentially arises. If the trial court is going to use a common man analysis to expand the meaning of the phrase premises leased to you to include an agreement by which a third party can then try to enter into a lease, then it must conclude that a common man would see that the edge was leased by the Searcy congregation parents, not by Student Life. Use of the edge requires a reservation, a separate payment of a fee, and the execution of a special release. This is consideration for the release, and any... Let me interrupt you. Missouri has this line of cases on you can determine ambiguity contract looking at other things if it's obvious Royal Banks, and I don't think you replied on Royal Banks, is one in that long line. What do you think of that? I don't think it makes one difference at all, Judge Benton, because no matter how you look at this amended conference contract or the insurance policy, and even if you allow every bit of extrinsic evidence to be taken into account to give it meaning, it does not change the fact that the insurance contract requires that the liability arise out of that portion of the premises leased by the additional insured to the named insured, and it does not change the fact that the edge was not leased by Student Life. The edge was arranged for, paid for, and it was provided for by someone other than Student Life. Any reasonable man would rightly conclude that Student Life didn't pay for the consideration of the use of the edge. The Searcy parents did. Their common man definition of a lease says that it is a contract granting occupation or use of property during a certain period in exchange for specific rent. Well, this amended conference contract and all of the collateral documents in and of itself did not give Student Life use of the edge, nor did this amended conference contract or any of the other collateral documents surrounding it provide for Student Life to pay the consideration for the use of the edge. The use of the edge was only available because the Searcy parents entered into an independent separate arrangement directly with Windermere for its use and paid the consideration for the same. For this reason, Your Honor, there can be no additional insured coverage under the Great American Policy. Thank you. Thank you, Counsel. Ms. McCubbin?  Speak up just a little bit. It wouldn't hurt. It wouldn't hurt old ears. As this Court well knows, this Court can affirm the District Court's decision on any grounds, and I would submit to you that the District Court reasonably interpreted the Great American Insurance Policy to provide coverage for the liability that Windermere owed to Ms. Richards as a result of the amended conference contract. I agree with Counsel that this issue is about the language of a contract, about the additional insured endorsement that Great American selected in response to its named insured's request to make Windermere an additional insured. I disagree with Counsel's reading of that endorsement. That endorsement provides that Windermere is an additional insured for liability arising out of the ownership, maintenance, or use of the portion of the premises leased to Student Life. But still doesn't it come back to what that portion of the premises leased is? What it doesn't say, Your Honor, is that the only circumstances under which Windermere would be additional insured is if an injury takes place in the locations expressly identified in the amended conference contract. It conditions coverage on the relationship between the named insured and the additional insured and the contract between those two parties. Here the undisputed evidence is the contract between those two parties was not a fully integrated document. It didn't list every single place where Student Life's campers might participate or be found during the occurrence of the camp. Instead, it was an open-ended contract with a minimum number of rooms, a minimum number of meals, and expressly provided access to different facilities on the premises. To ask Chief Judge Smith's question once again, I didn't really appreciate this until opposing counsel kept emphasizing it. That portion of, certainly leased is important, but that portion of the premises leased is important as well. Which is to say that the contract, the additional insured provision, recognizes that you can lease just a portion of it, but use other parts of a property as well. So if I lease a small corner, I could use the other parts of the property, but I haven't leased it. That seems to be what that means by that portion of the premises leased. So I would suggest to you, Your Honor, that there's a couple of ways to respond to that particular concern. The first is, as the district court found, that the edge was in fact a part of the premises that were leased to Student Life by virtue of the fact that but for the amended conference contract, which contemplates access to that particular activity, these attendees, including Ms. Richards, would not have access to it. And therefore, the lease contemplated or included, and I think initially the district court determined that the amended conference contract was ambiguous as to the scope of what was intended to be the portion of the premises leased. But the other thing I would suggest to you is, consistent with the court's decision in Colony Insurance Company v. Pinewood Enterprises, to read the endorsement that narrowly is to render the phrase arising out of meaningless. Yeah, but see, I'm having problems with this, particularly with your first point. Use does not equal lease. And let me give you an example. You know, Judge Benton brought up landlord-tenant law. And if I was a tenant in an apartment complex and it allows the use, not the leasing, the use of the exercise facility. So under your view, if you have the use of the exercise facility and somebody falls off a treadmill or something of that nature, presumably you can go after the insured under or go after the insurance company under an additional insured policy because, you know, it arrives out of the leased premises. I think that's consistent with the reasonable expectations of these parties. For example, notwithstanding the fact that there were portions of the premises that were explicitly excluded from the amended conference contract, like the facilities where the employees lived, it seems illogical to me to assume that if a camper wandered into the portion of the facility and were injured, that Windermere and Lifeway wouldn't expect that injury to be covered. But if that's true, and to go back to either one, actually, the edge or the exercise facility, under your view, Student Life's insurance company, Great American, would be responsible not only for the injuries to the campers or in the case of being in an exercise facility, but also anybody that's using the facility. Because you're making the argument that the property is leased to Student Life or else I don't know how it works under the plain language of the agreement. I disagree with that contention, Your Honor. It would not arise out of the ownership, maintenance, or use of the premises leased to Student Life if some party who was present on the campus by virtue of some other event was not participating in the event that was described in the amended conference contract was injured. There has to be a relationship between the event and the leased premises described in the amended conference contract and the liability that arose to Windermere. So in your hypothetical, I wouldn't, pardon me, Your Honor. Sorry, it's somewhat rude sometimes when judges interrupt, but usually we do it out of knowing our memories are faulty and we'll quickly forget our question if we don't intercede. Would you respond to counsel's position that the premises was actually leased to a group of parents, the edge, that there was actually a separate agreement that authorized use of the edge, and that that's the distinction here? I disagree with counsel's supposition that the edge was leased to parents. There is a damage waiver that's signed by the parents for the benefit of both Student Life and for Windermere in exchange for use of the edge, and in this particular circumstance there was a fee paid in exchange for Ms. Richards' use of the edge, but I would disagree with any contention that that was a lease of the edge facility or that that lease was granted to the exclusivity of Student Life, the counterparty to the amended conference contract. It seems inconsistent to me that the damage waiver would exclude both Student Life and Windermere from liability if, in fact, it was contemplated that the parents or the congregants of Searcy Baptist Church were the only parties that had access to the edge. Who's the check made out to? Is that in the record? The parents' check. Who do they make them out to? I can't answer that question. It's not in the record, Your Honor. Okay, not in the record. Is it in the record where the money goes? I can't answer that question. It's not in the record. Oh, boy. And your argument on the integration of the agreement, is that based on the fact that you have this supplemental thing that goes out that says, oh, by the way, that looked to me more like an advertisement or an informational type of thing. Look, you can use the edge, too. Is that the argument you're making or is it different on the integration point? It's based on a number of factors, including the fact that the amended conference contract by its plain terms does not contain an integration clause. It's also based on the testimony of the corporate representative of Windermere who testified that the terms or the extent of the activities can be modified orally while the parties are participating at the camp and, in fact, regularly are modified orally. The purpose of that contract is to ensure that there's a modicum of space, a minimum they have the right amount of food before the people show up, there are places for people to lay their heads. It is an overly technical interpretation and reading of this contract, both the insurance contract and the amended conference contract, to suggest that any premises not listed there that clearly, clearly are those that the parties anticipated would be accessed and used by these campers to the increase of liability that Windermere otherwise would have would not be part of the premises leased to Student Life. It is also inconsistent with the scope of the plain language of the insurance policy. You know, a great American could have, had it so chosen, issued an additional insured endorsement that tied the additional insured status to vicarious liability. They could have tied it to injuries located at a specific location. They could have excluded inherently dangerous activities. They could have excluded activities, you know, specified locations. They didn't do that. What they did was they issued the endorsement that, on its face, plainly purports to cover Windermere for the elevated liability that it is exposed to by virtue of Student Life bringing these children and their employees to Windermere's location for the purposes of participating in this camp. Counsel, you also mentioned the reasonable expectations doctrine several times in response to my questions. Is that separate from the plain language of the agreement? Those are considered separate doctrines, I know, in most states. And did you make that argument about reasonable expectations throughout the litigation? Your Honor, they are separate. I think it is a reasonable interpretation of the plain and unambiguous language of this endorsement to find that this particular liability is covered under that language. I think upon a finding of ambiguity under the contract, it would be consistent with the party's reasonable expectations that this would be a covered risk for which Windermere would be considered additional insured. Well, Counsel, now I'm worried a little bit. I thought the position in your brief was that the contract is blatantly, I think, ambiguous in light of all this stuff. But now you're saying it's unambiguous. Tell me what you believe in. Our position is that this court can affirm the district court's result on any theory. And that those theories... Supported by the record. Supported by the record, that is correct. And that on the legal issue of whether or not there is coverage under this policy, it may be found either by virtue of the plain and unambiguous language of the contract or by virtue of the existence of a patent or a latent ambiguity in either the insurance policy or the amended conference contract. Under any of those theories, we think coverage ought to be provided. Thank you. Thank you. Thank you.   Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Counsel, there's... Excuse me. Mr. Spivak, there's another appellant, another appellee to hear from. Mr. Martucci. Thank you, Judge. May it please the Court, I'm Patrick Martucci, representing the appellee, Carly Richards. Judge Strauss, to follow up on your question regarding the integration way that is significant, if you look at the amended conference contract, it is clearly not a complete contract regarding everything that Student Life intended to lease. That's apparent by use of the language grounds and facilities. And so when you have a contract that is not integrated, you do look at extrinsic evidence to determine what was the agreement between the parties. And you look at that extrinsic evidence, and Judge Benton, you talked about the facts back response sheet being important, but also the testimony of Mr. Bennett, who was the assistant president of Student Life, talked about, yeah, it was all part of the understanding that we were leasing the facilities, including specifically the recreational facilities, and even said, including the EDGE. There was many things that Student Life was leasing. The amended conference contract, what it lists is the conference space. I don't think there's specific mentioning as to what lodging was to be used. But the extrinsic evidence clearly shows there was much more that was to be leased between these parties, as by their history for the last 10 years have shown, than just this conference space and just these dorms. That was all part of the lease. How many times, the word grounds, I'm just looking quickly, is it just once in the contract, the first page? Judge Benton, I believe it is mentioned twice. On page one, I see it down there on Windermere grounds. On page three of four of the amended conference contract, it says, use of conference space and facilities begins at the start time and stated in the contract. That's after the laundry list of conference space information. And then you go to the last page under property damage slash abuse. The above name group will have financial responsibility for any damage and excessive wear and tear it incurs to the Windermere grounds, facilities, or property to the extent that such damage or excessive wear and tear arises from the negligence or willful misconduct. In the next sentence, cleanup of any facilities or grounds. Then under general policies, it talks about Windermere reserves the right to change guest rooms, conference space, and or other events and services. So it's clear from this, as well as some of the holes when it talks about just meals and it doesn't specifically mention the cafeteria area, it is clear from this that Student Life was going there not because they like the conference rooms, not because they like the sleeping quarters. They went there because they wanted to host an event using Windermere's property, using Windermere's facilities, using Windermere's grounds. And this liability for Windermere arose out of the use of the premises that it was leasing. Is the Edge the only one you had to pay for extra? Edge was something that the Yeah, was it the only one you had to pay for extra? No, I believe there is the cave and there is the paintball facilities. There may be one others. You know, I'm still a little worried about the extent of liability and I know that opposing or excuse me, the other appellee's counsel made this point, but rising out of the ownership use maintenance doesn't seem like much of a limitation the more I think about it. I mean, it is true that if some other group perhaps used it, it wouldn't be arising out of your use of these premises, but if you do something, if one of your campers does something to break something on a rope or leaves a banana peel on the rope's course or whatever the case may be, it still would hold Great American liable if some other group comes in five hours later and slips on the banana peel or uses the broken rope, wouldn't it? Well, under the colony case, Judge, the arising out of language just requires blowing from or a simple causal connection, but for cause. These are all student life campers. These are all student life campers that are only entitled to come to Windermere facility only entitled to use their facilities because of the contract between student life and Windermere. So that arising out of language, although we don't have those facts here, there's more of a direct nexus between student life's hosting of an event, student life's use of the facilities and the liability to Windermere because student life specifically bargained for the use of all the facilities that were available there, including the EDGE course. Student life even promoted the EDGE and even asked for waivers for parents to sign, including these specific ropes courses that are listed in the waivers. These are student life waivers. Clearly, the contemplation of student life was that they were going to have access to and use of the facilities as part of their lease. Of course, the other interpretation is they wanted to make sure that they weren't going to be held individually liable, that the organization would be held individually liable for any damages that occurred. I mean, it was just out of an abundance of caution. I don't know if that tells you much about what the contract says. And that release, there's no argument that the release complied with Missouri law, but that shows that if they didn't want to try to be held liable, they needed to draft a specific release that was compliant with Missouri law. But it shows student life knew part of its lease was Windermere, contemplated these additional facilities, such as the ropes course, which is the EDGE. That was part of the arising out of their use of the Windermere's property. I see my time is up. Thank you very much. Thank you, Mr. Martucci. Mr. Spivak. I have three points very quickly, the first of which is the most important, is the first of which picks up on Judge Strasse's questions. I think he'd do a better job of summarizing my argument in terms of the questions than I've been able to do in 15 minutes of speaking directly. But the first problem with the argument being made by the appellants here and is recognizing Judge Strasse's questions, is that their argument for the interpretation of both this contract and this additional insured provision is that it would make Great American liable for premises and activities over which it's named insured had no involvement and no control. And that can't be the reasonable expectation to be applied to the interpretation of this policy language. Well, surely, counsel, if there's a high water, whatever you call it, thing that keeps water, water tower, if there's high water tower or an electrical plant, and it's clearly got a chain link fence and clearly marked off, surely that's out of the question, right? It has nothing to do with Student Life's contract. They couldn't use that thing that's chained off, set off from everybody else, but for the fact that the Searcy congregation parents entered into their separate arrangement with Windermere for their use. And if the parents didn't lease the edge, then no one did, because their definition of lease is a contract granting occupation or use of property during a certain period in exchange for a specific rent. Clearly Student Life didn't do that. If the Searcy parents didn't do that, then a fundamental element of the Great American contract is not met, and that requires liability arising that portion of the premises leased to the named insured by the additional insured. Thank you, Your Honors. Thank you, Mr. Spivak. Court, thanks all counsel for the arguments you've provided to the Court. We'll struggle with this matter and render a decision in due course. Thank you.